UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| James Sampson, et al., | ) |
| --- | --- |
| PLAINTIFFS | ) CASE NO. 1:17-cv-658 |
| v. | ) Judge Michael R. Barrett |
| SunCoke Energy, Inc., et al., | ) |
| DEFENDANTS | ) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE NOTICE OF MATERIAL DEVELOPMENTS**

Defendants' Motion for Leave (the Motion) interjects irrelevant acts (the issuance of a preliminary permit and the transmittal of permitting documents to USEPA by Ohio EPA) to attempt to negate the sworn nuisance testimony of the Plaintiffs and their adversely affected neighbors, visual and physical evidence of air pollution impacts (photographs and greasy deposit samples), and corroborating air monitoring data. And, based on these irrelevant acts, the Defendants suggest, without sworn evidence or other competent proof, that this Court should ignore all the overwhelming evidence of nuisance, offered at the preliminary injunction hearing and which was subject to cross examination, because Ohio EPA has supposedly already investigated the nuisance in some unspecified way. In addition to trying to use a generalized and vague implication to attempt to rebut specific factual testimony that this Court heard firsthand, the Motion and proposed notice attempt to suggest that the circumstances surrounding Defendants' pollution have changed since the close of evidence on the preliminary injunction. In fact, severe pollution events continue to plague the community. *Sampson Decl.*, Ex. 1, ¶ 7-10. Because these "new developments" are not competent proof of an investigation of the evidence

1

presented, are immaterial to preliminary injunction issues, and are not "supplemental authority," this Court should deny the Motion.

> ***The offering is neither "supplemental authority" nor is it "material" to injunction issues.***

The Motion first introduces the permit documents under the guise of "supplemental authority" and as a "material development." *Motion*, Doc. 47, PageID 3472. Motions for leave to file supplemental authority typically seek leave to file binding court opinions issued after the briefing was submitted. The Motion does not identify any new case law or any new regulatory guidance document or policy interpretation, let alone such authority that has a bearing on whether the Court should issue the injunction. It is also beyond dispute that Ohio EPA's actions in sending a proposed permit to USEPA for review are not "authority." Further, Ohio EPA's transmittal of these documents to USEPA is ***not*** a material development. Transmitting these documents merely triggers a 45-day period for USEPA to have the opportunity to object to the permit. This standard procedure is followed for permits of this type. USEPA's review of the terms of a draft permit has no bearing on whether this Court should grant injunctive relief in light of the specific testimony and other evidence of irreparable harm.

> ***There is no evidence of any Ohio EPA investigation.***

The Motion also suggests the routine transmittal of a permit somehow shows that Ohio EPA "investigated" whether the Haverhill coke plant (Coke Plant) was violating the Ohio Air Nuisance Rule, OAC § 3745-15-07, during the pendency of the preliminary injunction motion. *Motion*, PageID 3472. Defendants provide zero evidence that any such "investigation" was done or what facts and evidence the investigation purportedly evaluated. For example, there is no evidence that the local air agency or Ohio EPA reviewed and evaluated the transcripts and exhibits from the September 2018 preliminary injunction hearing before this Court or that

anyone with those agencies reviewed the years of photographic and video evidence of air pollution clouds and smog or reviewed and evaluated the PM2.5 data gathered by the Sampsons and Gannons. There is also zero evidence that environmental officials evaluated the adverse health and property impacts testified to during the September injunction hearing by community residents or that the agency investigated the air nuisance issue in light of SunCoke's post-preliminary injunction hearing attempts to silence current and future property owners and witnesses through property purchases, releases of liability, and "gag orders." Ex. 1, ¶ 11.

### *The alleged determination contradicts Ohio EPA's permitting policies.*

Indeed, the "investigation" and "determination" that Defendants attempt to imply are embodied in the proposed permits not only defy logic, but are also entirely contrary to Ohio EPA's standard permitting review process.[1] According to sworn testimony from Michael Hopkins—who is Ohio EPA's Assistant Chief of the Air Permitting Section and who signed the Coke Plant's Proposed Title V Permit on behalf of Ohio EPA—the Ohio EPA does not investigate citizen allegations of nuisance when determining whether to issue a permit. *Hopkins 9/17/2015 Tr.*, Doc. 36-3, PageID 2088, 2237-38, 2240, 2243-44, 2249-50. Rather, Ohio EPA only looks at the proposed permit terms, as written, and decides—under the assumption that the company will comply with everything in the permit—whether a nuisance will be caused. *Id.*, p. PageID 2088, 2237, 2238, 2240, 2243-44, 2249-50; *Charles 7/28/2015 Tr.*, Doc. 37-1, PageID 2404. There is simply no Ohio EPA investigation, as part of the permitting process, to determine whether the Coke Plant is an ongoing nuisance.

---

[1] Defendants also conflate the Portsmouth Local Air Agency's (PLAA) response to individual nuisance reports with a purported investigation as part of the permitting process. Testimony is clear that no investigation of nuisance complaints is performed as part of permitting. Furthermore, the evidence clearly establishes that PLAA's response procedure will factually never confirm individual citizen reports because PLAA does not develop patterns or trends in the reports received and the only way a reported nuisance can be confirmed is for the investigator to observe the exact smell or see the same visible pollution cloud reported. *Charles 7/28/2015 Tr.*, Doc. 37-1, PageID 2396-97, 2409-14.

*The submittal ignores admitted material facts.*

In fact, several aspects of the permitting documents show that the Ohio EPA is unaware of, or has ignored, material facts about the Coke Plant and air pollution issues around the plant. And, of course, Defendants seek to take advantage of Ohio EPA's lack of knowledge. First, the Ohio EPA permitting documents cite the Coke Plant's air monitoring network (Doc. 47-3, PageID 3695-96), including the Back Road air monitoring site, showing that Ohio EPA is simply unaware of prior testimony by both Plaintiffs' expert, Dr. William Auberle, and Defendants' air pollution consultant, Dr. Shari Libicki, that the Back Road site unquestionably fails siting criteria. *Auberle Testimony*, Doc. 43, PageID 3075-3079 (the Back Road monitor site "is pretty much useless for almost anything for purposes of air pollution measurements" because it fails nearly every siting criteria and is in the middle of a dense stand of trees); *Libicki Testimony*, Doc. 43, PageID 3210 ("The Back Road monitor was not sited according to U.S. EPA standards. There's no question about that.").

*Purported NAAQS compliance is immaterial to the nuisance issues.*

Defendants also cite Ohio EPA's statements that there has never been a National Ambient Air Quality Standard (NAAQS) violation. These statements about NAAQS compliance are misleading and show a lack of knowledge by Ohio EPA that the key monitor fails siting criteria and a lack of knowledge on the part of Ohio EPA that only two out of the six NAAQS pollutants are even measured by the Coke Plant's monitoring network.

These statements also ignore that NAAQS compliance has no bearing on whether the Ohio Air Nuisance Rule has been violated. The NAAQS are separate standards from the Ohio Air Nuisance Rule. *Libicki Testimony*, Doc. 43, PageID 3215; *Auberle Testimony*, Doc. 43, PageID 3067-68. A NAAQS exceedance is not needed to prove a nuisance violation, as even

dust, fumes, gases, and odors are covered by the Ohio Air Nuisance Rule. OAC § 3745-15-07. In fact, the ambient air monitoring network, as it is operated by the contractor for the Coke Plant, was not designed to and does not monitor for the nuisance conditions that exist in the neighboring Back Road community. The instruments are not the type of instruments that one would use to assess a nuisance condition, which are often short, high-intensity, high concentrations of pollutants. *Auberle Testimony*, Doc. 43, PageID 3099; *Carpenter Testimony*, Doc. 39, PageID 2748.

### *The self-conferred absence of a "compliance schedule" is immaterial to nuisance issues.*

Defendants also argue that the absence of a compliance schedule and plan for the Ohio Air Nuisance Rule in the proposed permit implicitly means that the Coke Plant is in compliance with the Ohio Air Nuisance Rule. This argument suffers from, at least, two fatal legal and evidentiary flaws.

First, the absence of a compliance plan and schedule in the permit is a result of **Defendants'** self-serving assertion in its permit application that it has not violated the Ohio Air Nuisance Rule. Applicants for air pollution permits must describe "all applicable requirements with which the source is in compliance" and "[f]or applicable requirements for which the source is not in compliance at the time of permit issuance, a narrative description of how the source will achieve compliance with such requirements and a schedule of compliance." OAC § 3745-77-03(C)(9). In other words, the Defendants offer their own conclusion as to whether they are in compliance, and there is no mandatory verification of compliance (or non-compliance) with the law by Ohio EPA. OAC § 3745-77-08(A).[2] Second, as explained above, Ohio EPA's actual

---

[2] A certification of compliance, beyond being self-serving, is also of dubious value because SunCoke environmental compliance personnel have testified that there is no requirement to report an air nuisance and that, *if* evidence of an air nuisance were found, SunCoke would not report an air nuisance; it would simply pass along the "information" to

evaluation of the Ohio Air Nuisance Rule is confined to an evaluation of the permit to determine whether *future compliance* with the permit terms, *as written*, will cause a nuisance. Thus, the absence of a compliance plan and schedule is not probative of any fact or issue before this Court.

Hence, Defendants have offered no evidence that Ohio EPA scrutinized Defendants' self-certification of compliance, or that Ohio EPA concluded, based on the absence of a compliance plan or otherwise, that the Coke Plant has complied with and is in compliance with its air permits, including the air nuisance permit term, or with the Ohio Air Nuisance Rule, a provision of the Ohio State Implementation Plan (SIP).

Because the events discussed in the Defendants' proposed notice are not material to the preliminary injunction motion and because the actual evidence does not support the assertions made by Defendants regarding purported nuisance investigations and determinations, this Court should deny the Motion.

Respectfully submitted,

s/ D. David Altman

D. David Altman (0021457), *Trial Attorney*
Justin D. Newman (0080968)
Robin A. Burgess (0096442)
*AltmanNewman Co. LPA*
15 East 8th Street, Suite 200W
Cincinnati, Ohio 45202
(513) 721-2180
Fax: (513) 721-2299
daltman@environlaw.com
*Attorneys for the Sampsons and Gannons*

---

and "cooperate" with the local air agency. *Batten Testimony*, Doc. 42, PageID 2988; *Starkweather Testimony*, Doc. 42, PageID 3026-29.

## **CERTIFICATE OF SERVICE**

       I hereby certify that on July 11, 2019, I electronically filed a copy of the foregoing Opposition with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all parties in the case by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

       s/ Robin A. Burgess

       Robin A. Burgess
       *An Attorney for Plaintiffs*